OSCN Found Document:DEPT. OF HUMAN SERVICES CHILD SUPPORT SERVICES v. COLDWATER

OSCN navigation

Home

Courts

Court Dockets

Legal Research

Calendar

Help

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

DEPT. OF HUMAN SERVICES CHILD SUPPORT SERVICES v. COLDWATER2014 OK CIV APP 56Case Number: 110933Decided: 05/16/2014Mandate Issued: 06/11/2014DIVISION IIITHE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IIICite as: 2014 OK CIV APP 56, __ P.3d __

STATE OF OKLAHOMA, DEPARTMENT OF HUMAN SERVICES CHILD SUPPORT
SERVICES, Plaintiff/Appellee,v.LAFE C. COLDWATER,
Defendant/Appellee,andERICA ANN BUTLER, Custodian/Appellant.

APPEAL FROM THE DISTRICT COURT OF GARFIELD COUNTY, OKLAHOMA
HONORABLE DENNIS W. HLADIK, JUDGE

AFFIRMED IN PART, VACATED IN PARTAND REMANDED FOR
FURTHER PROCEEDINGS

Bruce Hammer, Oklahoma Child Support Services, Enid, Oklahoma, for
Plaintiff/Appellee,Jon R. Ford, Enid, Oklahoma, for
Defendant/Appellee,Randy J. Long, Terri K. Blakley, FIELD, TROJAN, LONG
& CLAYPOLE, P.C., Enid, Oklahoma, for Custodian/Appellant.

Bay Mitchell, Judge:
¶1 Custodian/Appellant Erica Ann Butler1 appeals the decision of the trial
court ordering Defendant/Appellee Lafe Coldwater to pay $400 per month in child
support, denying her request for child support arrearages, and awarding legal
custody of C.M.B., the minor child, to Defendant/Appellee.2 Custodian/Appellant Erica Ann
Butler ("Mother") is the natural mother of C.M.B., a minor child born
out-of-wedlock. After the birth of the child, a paternity test determined
Defendant/Appellee Lafe Coldwater ("Father") was the father of C.M.B., and Child
Support Services filed an administrative action against Father to establish
paternity and support obligations.
¶2 Prior to the birth of the child, Mother and Father had a sexual
relationship, but were not a couple in a traditional sense. Mother lived with
her boyfriend at the time, Joshua Guidroz. During her pregnancy, Mother told
Father either he or Mr. Guidroz could be the father of the unborn child. C.M.B.
was born December 1, 2008, and Mr. Guidroz was listed as the child's father on
the birth certificate. Mother later filed a paternity action against Mr.
Guidroz, but a paternity test revealed Mr. Guidroz was not C.M.B.'s father.
Through an administrative proceeding initiated by Child Support Services, Father
was ordered to take a paternity test in May 2010. Father was informed sometime
in August or September 2010 that he was the biological father of C.M.B. Pursuant
to an order entered by the Office of Administrative Hearings: Child Support,
Father was ordered to pay child support to Mother beginning October 1, 2010.
Father was not ordered to pay any back child support to Mother for the time
period from C.M.B.'s birth through September 2010. Mother did not appeal this
administrative order to the district court, and it was docketed in district
court pursuant to 56 O.S. 2011
§237.10. Father filed a petition for joint custody on October 15, 2010 using
the same district court case number assigned to the docketed administrative
order.3
¶3 The parties agree Mother was the sole care giver for C.M.B. from the time
of birth until September 2010 (shortly after Father was informed he was the
child's biological father) when Father began having some visitation with the
child. After a temporary order hearing March 3, 2011, the trial court awarded
Mother legal and physical custody of C.M.B. subject to Father's visitation on
six (6) overnight visits out of every fourteen (14) days. The parties continued
this custody arrangement until a trial on the merits was held January 12 and 20,
2012.4
¶4 Testimony at trial showed the parties generally agreed the physical
custody arrangement was working well, but Mother and Father also agreed they had
problems communicating with each other. Father felt that Mother made unilateral
decisions regarding the minor child without consulting him while Mother felt
like Father unnecessarily questioned her parenting skills. Both parents agreed
it was in C.M.B.'s best interest if they were both involved in her life.
¶5 A guardian ad litem ("GAL") was appointed in this case. She
presented her report at trial and also testified. Her initial recommendation was
that joint custody would not work due to the lack of communication between
Mother and Father. She recommended that Father be given legal custody of C.M.B.
with each parent having equal physical custody. She based this decision on
Father's willingness to work with Mother in parenting C.M.B. and his willingness
to maintain C.M.B.'s relationship with her maternal family. The GAL also noted
Mother's apparent hostility to having Father involved in C.M.B.'s life because
the two fathers of her two other daughters were in no way involved in their
lives. After hearing all of the evidence at trial, the GAL changed her
recommendation and decided joint legal custody could work if Mother and Father
could communicate with each other. The GAL testified that both Mother and Father
were capable parents who had C.M.B.'s best interests in mind. At the conclusion
of all the testimony and evidence, including a home study of Mother's house
which found Mother's home to be safe, clean, and appropriate, the trial court
awarded legal custody to Father but granted the parties equal physical custody
of C.M.B. On appeal Mother argues the record does not support the trial court's
decision to award legal custody to Father.
¶6 The trial court's order also deviated from the child support guidelines by
reducing Father's obligation to Mother from the amount calculated by the
guidelines of $661.29 per month to $400 per month. Testimony showed Mother works
as a physical therapy assistant making approximately $9.00 per hour. Father has
a high paying job with an oil field services company. The trial court imputed
income to him of approximately $9,000 per month.5 To support this deviation, the trial
court's order stated:

Based on the parties' current income, a monthly credit of $800 that is
attributed to Mom supporting her two (2) older children, and the arguments
of counsel, Dad, as Obligor would normally pay to Mom a monthly child
support payment of $661.29 based on the Child Support Computation
Guideline. . .; however, the Court is deviating from the Child
Support Computation and is ordering Dad to pay Mom monthly child support
in the amount of $400.00 per month.
At trial Father testified he could more easily afford to send C.M.B. to
private Montessori school if his child support obligations were reduced. On
appeal Mother's second proposition is that the trial court failed to comply with
the mandate set forth in 43 O.S.
2011 §118H(B) requiring the trial court to justify any deviation with
specific findings that such deviation is in the best interests of the minor
child and the amount of support under the guidelines is "unjust or inappropriate
under the circumstances." Father argues the record supports the deviation even
if the specific findings were not included in the trial court's order.6
¶7 In her answer to Father's petition for joint custody, Mother requested a
judgment be entered representing the amount of child support Father owed from
the time of C.M.B.'s birth in December 2008 through the time he began paying
child support in October 2010. At trial Father argued, and the trial court
agreed, Mother's claim was barred by res judicata because the matter had
been settled in the administrative proceeding where Father argued Mother waived
her right to any child support arrearages. Mother argues the record does not
firmly establish the matter was litigated in administrative court and, even if
it was, she did not knowingly waive her right to child support arrearages as she
was unrepresented by counsel at the administrative level. Mother's third
appellate argument is that the trial court erred in the denial of her request
for payment for child support arrearages.
LEGAL CUSTODY OF C.M.B.
¶8 "On appeal, this Court will not disturb the trial court's judgment
regarding custody absent an abuse of discretion or a finding that the decision
is clearly contrary to the weight of the evidence." Daniel v. Daniel, 2001 OK 117, ¶21, 42 P.3d 863. The burden is on the
appealing party to show that the decision is "erroneous and contrary to the
child's best interests." Id. "Absent such a showing, the trial court's
determinations are presumptively correct." Shaw v. Hoedebeck, 1997 OK CIV APP 69, ¶11, 948 P.2d 1240 (citing Carpenter
v. Carpenter, 1982 OK 38, 645 P.2d 476). We give deference to
the trial court in reviewing custody decisions because it "is better able to
determine controversial evidence by its observation of the parties, the
witnesses and their demeanor." Hoedebeck, 1997 OK CIV APP 69, ¶10.
¶9 Mother argues the trial court awarded Father legal custody of C.M.B. to
avoid having to require Father to pay child support to Mother and despite the
fact he ignored his paternal obligations until he was required to submit to a
paternity test per court order. Mother insists there was nothing in the record
to show it was in C.M.B.'s best interests that Father be granted legal
custody.
¶10 We disagree with Mother's interpretation of the facts and record. First,
the trial court ordered Father to pay child support negating Mother's first
argument. Second, the record does not show Father ignored his paternal
obligations until ordered to submit to a paternity test. Rather, Father had
little reason to suspect he was the father of C.M.B. even after Mother told him
it was a possibility. Mother had been living with another man around the time of
conception. This man was listed as the father on the birth certificate and a
paternity suit had also been filed against him. We recognize there is no dispute
that Father was not involved in C.M.B.'s life until she was approximately
eighteen (18) months old, but once Father confirmed his paternity of C.M.B., by
all accounts he became an active and involved parent.
¶11 Our review of the record shows the trial court placed great weight on its
belief that Father was the best party to follow court orders and encourage a
relationship with the other parent when deciding to grant legal custody to
Father. Given our duty to defer to the trial court's consideration of witnesses
and evidence, we cannot say this decision was clearly contrary to the weight of
the evidence. We affirm the trial court's award of legal custody to Father.
CHILD SUPPORT DEVIATION
¶12 Oklahoma law provides for a rebuttable presumption that the amount of
child support calculated by the child support guidelines is the correct amount
of child support to be awarded. 43
O.S. 2011 §118(A). Section 118H(B) provides the trial court "may deviate"
from the amount of support indicated by the guidelines "if the deviation is in
the best interests of the child and the amount of support so indicated is unjust
or inappropriate under the circumstances." Should the trial court deviate from
the child support guidelines, it is required to "make specific findings of fact
supporting such action." 43 O.S.
2011 §118H(C) ("[T]he court shall make specific findings of
fact supporting such action.) (Emphasis added.) The findings of fact must
include the following:

1. The reasons the court deviated from the presumptive amount of child
support that would have been paid pursuant to the guidelines,
2. The amount of child support that would have been required under the
guidelines if the presumptive amount had not been rebutted, and
3. A finding by the court that states how, in its determination:

a. the best interests of the child who is subject to the support
award determination are served by deviation from the presumptive
guideline amount, and
b. application of the guidelines would be unjust or inappropriate in
the particular case before the
tribunal.
43 O.S. 2011 §118H(C). Under
the child support guidelines, Father's child support obligation to Mother was
$661.29 per month. The trial court reduced this amount to $400.00 per month but
failed to make specific findings of fact justifying the deviation as required by
43 O.S. 2011 §118H(C). Thus,
this portion of the trial court's order must be VACATED and REMANDED for a
determination of whether such facts exist to support the deviation, and, if so,
to articulate them as required by statute. See Kingery v. Kingery, 2011 OK CIV APP 122, ¶¶16-20, 270 P.3d 192 (reversing and
remanding a child support order which deviated from the guidelines for omission
of judge's signature and for not including factual findings explaining how the
child support obligation was derived).
CHILD SUPPORT ARREARAGES
¶13 Mother's allegation the trial court erred by finding her claim for child
support arrearages was barred by res judicata depends on whether the
issue was or could have been litigated at the administrative level.7 The doctrine of
res judicata, now commonly referred to as "claim preclusion," bars
relitigation of issues by parties or their privies which were or could have been
raised in a previous proceeding which resulted in a prior judgment on the
merits.8
State ex rel. Moshe Tal v. City of Oklahoma City, 2002 OK 97, ¶20, 61 P.3d 234. "The party against
whom it is interposed . . . must have had a full and fair opportunity to
litigate the claim or critical issue." Id. "Oklahoma's jurisprudence has
foreshadowed a willingness to apply preclusion doctrine to final adjudicative
administrative decisions if appropriate and not subject to some
recognized exception." Feightner v. Bank of Oklahoma, N.A., 2003 OK 20 ¶13, 65 P.3d 624 (emphasis added).9 See also
Dority v. Green Country Castings Corp., 1986 OK 67, 727 P.2d 135510;
Bostwick v. Atlas Iron Masters, Inc., 1988 OK CIV APP 20, 780 P.2d 1184.11 "[A] person who has once
actually administratively litigated his claim, fully and fairly. . .and lost,
may not then move to a different forum and successively litigate the same claim
or issue again outside the confines of normal judicial review of administrative
decisions." Feightner, 2003
OK 20, ¶18.
¶14 Mother argues the issue was not litigated at the administrative level and
that she did not knowingly waive her right to child support arrearages because
she was not represented by counsel at the time. Thus, she argues, the doctrine
of claim preclusion cannot prevent her for making her claim at the district
court. However, Oklahoma law does not support the pro se exception Mother
argues. Pro se litigants are held to the same standard as an attorney.
Funnell v. Jones, 1985 OK
73, ¶4, 737 P.2d 105. Further,
Oklahoma's statutory child support enforcement scheme shows Mother was given the
opportunity to litigate the issue of child support arrearages at the
administrative level. Failing to do so bars Mother from later making her claim
in district court.
¶15 The Oklahoma Department of Human Services ("DHS") is the state agency
responsible for administering the child support enforcement program for the
State of Oklahoma. 56 O.S. 2011 §§
237(A), 237.7(1). Oklahoma law gives DHS the authority to conduct child
support enforcement administrative proceedings through the Office of
Administrative Hearings: Child Support ("OAH").12 Id. at §237.7(3). Such
hearings are conducted before administrative law judges ("ALJ"). Id. at
§237.7(3). After evidence has been presented at an administrative hearing, the
ALJ shall enter a written order containing findings of fact and conclusions of
law as to each contested issue. Id. at §237.8. OAH is authorized to issue
orders detailing the current support obligation and past due support
obligations. See id. at §237A(A)(2). Final orders shall be appealable
directly to the district court in the same manner as provided in the Oklahoma
Administrative Procedures Act. Id. at §240.3(A)(1). See also 75
O.S. 2011 §§318-323. But see Dept. of Human Services v. Hernandez, 2003 OK CIV APP 35, ¶3, 68 P.3d 229.13 Such administrative
orders shall be docketed in the district court and "shall be enforced by the
district court in the same manner as an order of the district court." 56 O.S. 2011 §237.10.14 See
also Okla. Admin. Code §340:2-28-50.
¶16 The administrative order in the record is a pre-printed form with
handwritten entries to complete the required information. The order confirms the
paternity of Father and orders him to pay child support in the amount of $756.25
per month starting October 2010. Paragraph 8 provides a blank space for a
judgment to be entered against Father for any past due support for the time
period preceding October 2010. The term "N/A" is entered in this space. Whether
this entry shows the issue was litigated before the administrative court and no
support was ordered or whether it shows the issue was not presented at the
administrative level is irrelevant. The issue could have been litigated
at the administrative hearing.
¶17 We see no reason why an analysis similar to that applied in
Feightner and Bostwick, supra, should not apply to the case at
bar. The administrative order entered by OAH addressed the issues of paternity
and support obligations and was thus a "final" order within the meaning of
§240.3(A)(1).15 No other issues remained to be litigated between
the parties at the administrative level. See footnote 12, supra.
Because DHS was providing child support services to Mother, the claim was
appropriately pursued at the administrative level.16 56 O.S. 2011 §237(B)(3). Mother had
the opportunity to request a judgment for prior support obligations at the
administrative level but either failed to present the issue or was otherwise
denied such a judgment. Mother did not appeal the administrative order to the
district court. 56 O.S. 2011
§240.3(A)(1). Once she failed to appeal, her right to a review of the issues
addressed by the administrative order ended. See 75 O.S. 2011 §§318, 323. Similar to
the proceedings in Feightner and Bostwick, the administrative
remedies available to Mother were not her only means of seeking relief, but once
she pursued administrative remedies through OAH, she was bound by those
procedures. See Feightner, 2003 OK 20, ¶¶17-19;
Bostwick, 1988 OK CIV APP
20, ¶¶8-9.
¶18 Oklahoma's child support enforcement scheme does not provide a statutory
exception to giving OAH decisions preclusive effect. Rather, it establishes
procedures to appeal from an adverse administrative decision, 56 O.S. 2011 §240.3(A)(1), and
states such decisions "shall be enforced by the district court in the same
manner as an order of the district court." Id. at §237.10. These appeal
procedures were the appropriate avenue for Mother to pursue judicial review of
the denial of her claim for child support arrearages. See Feightner, 2003 OK 20, ¶18. The doctrine of
claim preclusion, the purpose of which includes "conserv[ing] judicial resources
and prevent[ing] inconsistent decisions," id. at ¶15, prohibits Mother
from presenting the same issue in a different forum. Id. at ¶18. The
trial court correctly barred Mother from relitigating the issue of child support
arrearages in the district court action because the issue could have been
litigated at the administrative level.
¶19 Consistent with the foregoing, the decision of the trial court is
AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS
consistent with this opinion.

BELL, P.J., and GOREE, J., concur.

FOOTNOTES

1 During
the proceedings below, Ms. Butler married and changed her last name to Norman.
For ease of reference, we used her previous last name of Butler in our case
caption.

2
Defendant/Appellee Lafe Coldwater also filed a counter-petition in error which
was later dismissed by the Supreme Court as untimely filed. Because the
counter-petition in error was dismissed, we have not referred to the parties as
counter-appellant or counter-appellee, respectively.

3 In
addition to requesting joint custody, Father's petition also asked the district
court to establish a visitation schedule and recalculate Father's child support
obligations.

4 Prior
to the January 2012 trial, Father obtained a default judgment after Mother
failed to answer his petition for joint custody which granted the parties joint
legal and physical custody of C.M.B., but designated Father as the final
decision maker should any disputes arise regarding the child. Mother then hired
counsel who had the judgment vacated. Mother answered Father's petition, and the
case proceeded to trial.

5 To
calculate Father's imputed income, the trial court considered his monthly salary
along with an average of past years' bonuses and stock payments. Father was
unable to calculate exactly the amount of bonus and stock payments he would have
each year but appears to have no disagreement with the amount of income the
trial court imputed to him. This was not one of the issues Father raised in his
counter-petition in error which was dismissed by the Supreme Court.

6 In his
reply brief, Father contends the following facts support the trial court's
deviation: Mother's previous receipt of public assistance, the increased
household income due to Mother's marriage to Joshua Norman, free child care
provided by paternal grandparents, and the child's young age. However, our
review of the record shows these facts were not argued during the trial on the
merits.

7 The
question of whether claim preclusion applies can be a question of law or a mixed
question of law and fact. Feightner v. Bank of Okla. N.A., 2003 OK 20, ¶3, 65 P.3d 624. "It is solely a
question of law if (1) the facts are undisputed, (2) the preclusion question can
be answered solely by reviewing the judgment put forward as the bar, or (3) the
preclusion determination can be made solely by inspection of the record of the
proceeding(s) culminating in the judgment put forward as the bar. [A]
deferential standard of review applies to resolutions of disputed facts when
supported by reasonable evidence; an independent judgment standard of review
applies to the ultimate conclusion that these facts do or do not trigger
preclusion." Id. (internal citations omitted).

8 We note
Father's petition requesting joint custody also asked the district court to
recalculate his support obligations. While the issue of current and ongoing
support obligations was addressed by the administrative order, the doctrine of
claim preclusion does not apply to this issue. Mother, Father, and DHS all
retain the ability to request modification of support obligations on a
prospective basis so long as the child is entitled to parental support. 43 O.S. 2011 §§112(E), 118I,
118.1(A).

9 "[O]ne
recognized exception is when there is a statutory intent or directive to the
contrary." Feightner, 2003 OK
20, ¶14. The Feightner Court found no statutory exception existed in
the statutes providing for administrative hearings at the Oklahoma Department of
Labor. Id. at ¶¶17-19. The Court applied the preclusion doctrine to bar a
plaintiff from pursuing her claim for unpaid overtime compensation in a suit in
district court when the matter had been fully litigated and decided against her
favor at the administrative level. Id. at ¶¶12-19. The Court concluded
the administrative relief "was to be an alternative one in nature and . . . an
individual with a wage claim enforceable in both administrative and judicial
forums would not be mistakenly required to exhaust the former to gain access to
the latter." Id. at ¶17. "Exhaustion of administrative remedies is
normally a prerequisite for resort to the courts in matters involving
adjudicative administrative proceedings subject to the [Oklahoma Administrative
Procedures Act, 75 O.S. §250,
et seq.]." Feightner, 2003 OK 20, ¶17 (internal citations
omitted).

10 In
addition to finding the National Labor Relations Act ("NLRA") did not preempt
aggrieved employees' state statutory retaliatory discharge claims, the Supreme
Court held the NLRA allowed aggrieved employees to recover cumulative and
supplemental remedies. Dority, 1986 OK 67, ¶¶6-11 and 12-14. The
aggrieved employees were successful in their administrative claims before the
National Labor Relations Board. Id. at ¶12. The Supreme Court concluded
this prior administrative adjudication did not bar the employees' pursuit of
remedies in state court because the state court claims "[did] not disturb the
scheme of remedies affordable by the administrative tribunal." Id. at
¶13.

11 In
Bostwick, 1988 OK CIV APP
20, ¶2, plaintiff suffered a work-related injury resulting in approximately
four months of medical leave. Plaintiff filed a worker's compensation claim
against his employer and was discharged from his position upon returning to
work. Id. Plaintiff filed an administrative claim for unemployment
benefits with the Oklahoma Employment Security Commission ("OESC") which denied
his claim concluding plaintiff was dismissed for cause. Id. at ¶3.
Plaintiff did not appeal the OESC's findings but later filed a retaliatory
discharge claim under the workers' compensation code in district court.
Id. The Court of Civil Appeals ("COCA") concluded the adverse OESC
administrative ruling did not bar his retaliatory discharge claim because the
remedies differed between the two. Id. at ¶5. "The remedy affording by
OESC [was] limited to receipt of unemployment benefits . . . and applie[d] where
employee is unemployed through no fault of his or her own." Id. However,
the remedy afforded by a successful retaliatory discharge claim "should be
viewed as collateral rather than incidental to claims for bodily injury or
unemployment benefits. Furthermore, recovery [for a retaliatory discharge claim]
is not barred where there is more than one reason for employee's discharge
[including dismissal for cause] so long as retaliatory motivations comprise a
significant factor in the decision to terminate." Id. Plaintiff was
allowed to pursue his retaliatory discharge claim but was bound by OESC's
findings of fact regarding the cause for his dismissal. Id. at ¶8.
"[S]ubject to adequate opportunity for administrative review, resolution of a
disputed issue of fact properly before the OESC should be allowed the same
effect as such finding in a judicial review would be entitled by statute."
Id. at ¶8. COCA noted administrative proceedings required procedural due
process but that "no particular form of procedure is dictated, and failure to
avail oneself of the full procedures provided by state law does not constitute
inadequacy of such procedures." Id. at ¶9.

12
Notably, OAH does not have jurisdiction to determine child custody. That duty
remains solely within the jurisdiction of the district courts. Compare 56 O.S. 2011 §§237(A), 237.7(3) and
75 O.S. 2011 §308a with 43 O.S. 2011 §551-201.

13 In
Hernandez, 2003 OK CIV APP
35, ¶1, the putative father appealed an administrative order to the district
court which affirmed the administrative order establishing paternity of the
child but leaving unresolved the issue of support obligations even though DHS
had requested a child support order in its application to OAH. The putative
father then appealed the district court order to the Supreme Court. Id.
Once assigned to the Court of Civil Appeals ("COCA"), COCA found the trial court
had no jurisdiction to consider putative father's administrative appeal because
the order was not a final order within the meaning of 56 O.S. 2001 §240.3(A)(1) or 75 O.S. 2001 §318(A)(1). Id.
at ¶¶3-4. Because the administrative order did not address putative father's
support obligations, it did not resolve all the issues arising out of the
controversy between the parties depriving the district court of appellate
jurisdiction. Id. at ¶¶3-4.

14 The
plain reading of the statute requires the final administrative order to be filed
with the district court even when the aggrieved party appeals the administrative
order to district court. 56 O.S. 2011
§237.10 ("Administrative orders entered pursuant to this title shall be
docketed in the county of the underlying district court order, if
any.").

15
While OAH is authorized to enter orders addressing prior support obligations, no
statutory authority or case law mandates an administrative order do so in order
to be a final order within the meaning of §240.3(A)(1). However, the order must
address both paternity and, at the very least, current support obligations to be
a final order. Hernandez, 2003 OK CIV APP 35,
¶¶1-3.

16 OAH
child support administrative proceedings are not exactly an alternative remedy
nor are they supplemental to or cumulative to using a judicial forum to
establish child support obligations. Rather, the two forums can be said to have
concurrent jurisdiction over the subject matter. See Scungio v. Scungio,
2012 OK 90, ¶11, 291 P.3d 616. See also 43 O.S. 2011 §112(E) (providing "any
child shall be entitled to support by the parents until the child reaches
eighteen (18) years of age"); 10
O.S. 2011 §7700-103 (authorizing both district and administrative courts to
adjudicate parentage under the Uniform Parentage Act, 10 O.S. 2011 §7700-101, et
seq.). Mother's action against Father to establish paternity and support
obligations was pursued at the administrative level through DHS, but Mother
could also have pursued an action to establish paternity and support obligations
in district court.

Citationizer© Summary of Documents Citing This DocumentCite
Name
Level
None Found.Citationizer: Table of AuthorityCite
Name
Level
Oklahoma Court of Civil Appeals Cases CiteNameLevel 1988 OK CIV APP 20, 780 P.2d 1184, 60 OBJ 2865, Bostwick v. Atlas Iron Masters, Inc.Discussed at Length 2003 OK CIV APP 35, 68 P.3d 229, STATE ex rel. DEPT. OF HUMAN SERVICES v. HERNANDEZDiscussed at Length 2011 OK CIV APP 122, 270 P.3d 192, KINGERY v. KINGERYDiscussed 1997 OK CIV APP 69, 948 P.2d 1240, 68 OBJ 3833, Shaw v. HoedebeckDiscussed at LengthOklahoma Supreme Court Cases CiteNameLevel 1986 OK 67, 727 P.2d 1355, 57 OBJ 2690, Dority v. Green Country Castings Corp.Discussed 2001 OK 117, 42 P.3d 863, 72 OBJ 3708, DANIEL v. DANIELDiscussed 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITYDiscussed 2003 OK 20, 65 P.3d 624, FEIGHTNER v. BANK OF OKLAHOMA, N.A.Discussed at Length 2012 OK 90, 291 P.3d 616, SCUNGIO v. SCUNGIODiscussed 1982 OK 38, 645 P.2d 476, Carpenter v. CarpenterDiscussed 1985 OK 73, 737 P.2d 105, Funnell v. JonesDiscussedTitle 10. Children CiteNameLevel 10 O.S. 7700-101, Short TitleCited 10 O.S. 7700-103, Applicability and Effect of Act - Adjudication AuthorityCitedTitle 43. Marriage CiteNameLevel 43 O.S. 551-201, Initial Child Custody JurisdictionCited 43 O.S. 118, Child Support GuidelinesCited 43 O.S. 118H, Deviation from Child Support GuidelinesDiscussed at Length 43 O.S. 112, Care, Custody, and Support of Minor ChildrenDiscussedTitle 56. Poor Persons CiteNameLevel 56 O.S. 237, Support Collection, Parent Location, and Paternity Determination ServicesDiscussed at Length 56 O.S. 237.10, Docketing and Enforcement of Administrative OrdersDiscussed at Length 56 O.S. 240.3, Appeal of Final Orders of the Office of Administrative HearingsDiscussed at LengthTitle 75. Statutes and Reports CiteNameLevel 75 O.S. 250, Short TitleCited 75 O.S. 308a, Governing ProvisionsCited 75 O.S. 318, Judicial ReviewDiscussed